UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

No. 3:21-cv-191

| | |
|---|---|
| DANIEL RUFTY LEGAL, PLLC, d/b/a Carolina Legal Services,<br><br>    Plaintiff,<br><br>v.<br><br>JASON BLUST, LAW OFFICE OF JASON BLUST, LLC, LIT DEF STRATEGIES, LLC, and RELIALIT, LLC,<br><br>    Defendants. | **COMPLAINT**<br>[JURY TRIAL DEMANDED] |

## Introduction

1.  Jason Blust is an Illinois lawyer who holds himself out to the public as having special expertise in the consumer debt defense industry. He owns and operates numerous businesses, including but not limited to the Law Office of Jason Blust, LLC ("LOJB"), Lit Def Strategies, LLC ("Lit Def"), and Relialit, LLC ("Relialit").

2.  In 2018, Blust solicited non-party Meg Sohmer Wood, a licensed North Carolina attorney, to form or take over the operation of a North Carolina consumer debt defense law firm that would do business as Carolina Legal Services. Wood eventually formed Meg Sohmer Wood, PLLC, d/b/a Carolina Legal Services ("MSW"), for that purpose. Blust acted, and was paid, as a consultant by MSW, superficially for his assistance in the selection of various vendors, including third-party companies that provided marketing, sales, and administrative support to MSW, as well as for general advice and recommendations related to the operations of a consumer debt defense law firm.

3. In late 2018, Daniel Rufty, a North Carolina lawyer that, at the time, worked for MSW, agreed to buy MSW. Rufty took over operations of the firm on May 1, 2019, and eventually changed the legal name of the firm to Daniel Rufty Legal, PLLC, d/b/a Carolina Legal Services ("Carolina Legal"). Blust continued to bill Carolina Legal for consulting and other services, including, for example, "data entry" services, throughout 2019 and 2020, both directly and through his businesses, LOJB, Lit Def, and Relialit, collecting more than $630,000 in fees from Carolina Legal during those two years.

4. Blust, LOJB, Lit Def, and Relialit were not, however, providing Carolina Legal with services worth anything approaching $630,000; they were, in fact, providing Carolina Legal with virtually no services at all. Using their access to and relationships with Carolina Legal's vendors—including Carolina Legal's outside accountant and bookkeeper—all of which were selected by Blust and his companies, as well as falsified and fraudulent invoices and bills, Blust and his companies siphoned funds from Carolina Legal for their own benefit and without any proper basis. This action follows.

**Parties**

5. Carolina Legal is a professional limited liability company organized and existing under the laws of North Carolina with its principal place of business in Charlotte, North Carolina.

6. Blust is a citizen and resident of Illinois who lives in or around Chicago, Illinois.

7. LOJB is a limited liability company organized and existing under the laws of Illinois with its principal place of business in Chicago, Illinois.

8. Lit Def is a limited liability company organized and existing under the laws of Illinois with its principal place of business in Chicago, Illinois.

9. Relialit is a limited liability company organized and existing under the laws of Illinois with its principal place of business in Chicago, Illinois.

## Jurisdiction & Venue

10. The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because the parties to this action are diverse and the matter in controversy exceeds the sum or value of $75,000.

11. The Court has jurisdiction over Defendants pursuant to N.C. Gen. Stat. § 1-75.1 *et seq.* and because Defendants all entered into agreements or otherwise provided services or claimed to have provided services to a North Carolina law firm and its clients located in North Carolina, as alleged herein.

12. Venue lies in this Court pursuant to 28 U.S.C. § 1391(b)(1).

## Facts

13. In 2018, Blust initiated a conversation with Wood, a licensed North Carolina attorney, about the operation of a consumer debt defense law firm in North Carolina.

14. Specifically, Blust solicited Wood to form or take over the operation of a law firm that would make use of a "program" that Blust previously developed—and had previously deployed in other jurisdictions—to provide credit card debt settlement and litigation defense to clients in North Carolina.

15. Blust is not and has never been licensed to practice law in North Carolina.

16. Wood agreed to form or take over the operation of the law firm per Blust's solicitation.

17. On February 22, 2018, someone (possibly Blust or his associate, Mark D. Guibaldi) filed articles of organization for MSW with the N.C. Secretary of State.

18. Blust managed all aspects of the initial organization of MSW, including but not limited to MSW's selection and retention of the following vendors, with which Blust had pre-existing relationships:

    a. Blust retained or directed Wood to retain K2 Accounting, an outside accounting and bookkeeping firm, to handle MSW's bookkeeping;

    b. Blust retained or directed Wood to retain National Paralegal and Notary, a nationwide administrative support firm;

    c. Blust retained or directed Wood to retain National Data Systems, a vendor that provided practice management software for MSW's practice;

    d. Blust retained or directed Wood to retain Sunshine Signing Connection, a nationwide mobile notary service;

    e. Blust retained or directed Wood to retain Global Client Solutions, LLC ("Global"), an FDIC insured institution that served as a "payment processor" for MSW;

    f. Blust retained or directed Wood to retain Carolina Client Services, LLC ("CCS"), a company that contracted with MSW to provide certain marketing, sales, and administrative support to MSW; and

    g. Blust retained or directed Wood to retain Blust's companies—Relialit, Lit Def, and LOJB—to provide "litigation support" services.

19. At or around the time that Wood formed MSW, she brought Rufty on board as a "Class B" partner in the firm.

20. During 2018, Blust and his businesses charged and were paid an unknown sum by MSW, purportedly for consulting and other services.

21. At the end of 2018, Rufty learned that Wood had accepted a job with Wells Fargo Bank, N.A., and planned to leave the firm.

22. Blust then facilitated the transfer of ownership of MSW to Rufty, who paid $10 for the purchase of the law firm.

23. On May 1, 2019, Rufty took over operations of Carolina Legal.

24. In November 2019, Rufty received a notice from the North Carolina State Bar (the "N.C. Bar") indicating that the N.C. Bar had commenced an investigation into Carolina Legal Services related to several potential ethical violations, including, among other things:

    a. The aiding and abetting of the unauthorized practice of law in North Carolina, including but not limited to staff of CCS, a vendor that Blust selected for Carolina Legal and recommended to Carolina Legal;

    b. False or misleading representations to clients about Carolina Legal's use of non-lawyers, including staff of CCS, a vendor that Blust selected for Carolina Legal and recommended to Carolina Legal;

    c. The collection of fees for services to be rendered by non-licensed attorneys, including CCS and other vendors of Carolina Legal, all of whom Blust selected for and recommended to Carolina Legal;

    d. Engaging in criminal debt adjusting—what Blust calls "the program"—in violation of N.C. Gen. Stat. § 14-424, on Blust's advice and recommendation that "the program" was ethically and legally compliant; and

    e. Failing to supervise the handling of entrusted funds paid into accounts with Global, a financial institution that Blust selected for Carolina Legal.

25. On June 11, 2020, the N.C. Bar commenced an action before the N.C. Bar's Disciplinary Hearing Commission ("DHC") by filing a complaint with the DHC that accused Rufty of numerous violations of the N.C. Rules of Professional Conduct, including but not limited to those referenced above.

26. Rufty has since settled that action by agreeing to a five-year suspension of his license, with a minimum 6-month active suspension, and payment of $1 million to a trustee to serve as restitution for clients with claims against Carolina Legal and Rufty.

27. From 2019 through 2020, including during the course of the N.C. Bar investigation, Blust, LOJB, Lit Def, and Relialit, billed for and received payment of, at least, $636,251.80.

28. Lit Def and Relialit's bills purported to relate to data entry and other administrative support services (e.g., the managing of calendars and case scheduling, the upkeep of client files, the forwarding of client documents, etc.) that Lit Def and Relialit were supposed to provide to all of Carolina Legal's clients in North Carolina whose cases had progressed to litigation in North Carolina courts.

29. Lit Def and Relialit did not, in fact, provide any such service for the vast majority of Carolina Legal's clients whose cases had progressed to litigation.

30. LOJB and Blust's bills purported to relate to consulting services that they either did not actually provide or provided so poorly as to expose Carolina Legal to the N.C. Bar investigation and complaint, Rufty's suspension from the practice of law, and Carolina Legal's payment to the N.C. Bar of $1 million in restitution.

31. Indeed, all of the ethical violations investigated and prosecuted by the N.C. Bar were the direct result of Blust's recommendations and directions with respect to the manner in which "the program" should operate and the selection of vendors for Carolina Legal.

32. Blust knew or should have known that his recommendations and directions to Rufty and Carolina Legal exposed Rufty and Carolina Legal to professional discipline and other liability.

## Claim I – Breach of Contract

(Carolina Legal v. Blust)

33. Plaintiff incorporates the above allegations herein by reference.

34. Though not in writing, Carolina Legal had a contract with Blust wherein Blust was supposed to provide consultation services with respect to the operation, administration, and management of a consumer debt defense or debt adjustment law firm.

35. Blust breached that agreement by:

    a. Failing to provide such services; or

    b. Providing such poor consultation, advice, and recommendations as to cause or permit Carolina Legal to engage in unlawful conduct, including but not limited to the facilitation of the unauthorized practice of law.

36. In fact, Carolina Legal's investigation by the N.C. State Bar was the direct and proximate result of Carolina Legal's decision to follow Blust's advice and recommendations with respect to the implementation of Blust's "program" of debt adjusting, and Blust's selection of vendors,

37. Carolina Legal has suffered damages as a result of such breach in an amount in excess of $75,000 to be determined at trial.

## Claim II – Breach of Contract

(Carolina Legal v. Relialit, Lit Def, and LOJB)

38. Plaintiff incorporates the above allegations herein by reference.

39. Though not in writing, Carolina Legal had an agreement with Relialit, Lit Def, and LOJB wherein same would provide "litigation support" services in exchange for Carolina Legal's payment of an agreed upon amount.

40. Carolina Legal fully performed its obligations under such agreement.

41. Relialit, Lit Def, and LOJB breached such agreement by failing to render litigation support services to Carolina Legal's clients and by charging Carolina Legal for services that those companies never actually rendered.

42. Alternatively, Relialit, Lit Def, and LOJB breached such agreement by providing services in an untimely and unprofessional manner, resulting in the dissatisfaction of and, in some instances, legal claims accruing to Carolina Legal's clients.

43. As a direct and proximate result of such conduct on the part of Relialit, Lit Def, and LOJB, Carolina Legal has suffered damages in an amount in excess of $75,000 to be determined at trial.

## Claim III – Unjust Enrichment

(Carolina Legal v. All Defendants)

44. Plaintiff incorporates each of the above allegations herein by reference.

45. Carolina Legal brings this claim against all Defendants as an alternative to Claims II and III.

46. In the event that it is determined that Carolina Legal never had any enforceable contract with Defendants for the provision of any service, then Defendants have been unjustly enriched by Carolina Legal in an amount equal to all amounts that Carolina Legal paid to Defendants from May 1, 2018, through the present.

47. Defendants knew that Carolina Legal was not making such payments gratuitously.

- 8 -
Case 3:21-cv-00191-MOC-DCK   Document 1   Filed 04/27/21   Page 8 of 11

48. Defendants knowingly accepted the benefit of such payments from Carolina Legal.

49. Carolina Legal is entitled to the imposition of a constructive trust on Defendants that would require Defendants to transfer to Carolina Legal an amount equal to the amount that Carolina Legal paid Defendants from May 1, 2018, through the present.

**Claim IV – Negligence**

(Carolina Legal v. All Defendants)

50. Plaintiff incorporates the above allegations herein by reference.

51. Defendants owed Carolina Legal a duty of care, either by virtue of their contractual relationship with Carolina Legal, because they undertook to provide Plaintiff with certain services for which they billed and received payment of fees, or because they made certain representations to Carolina Legal related to their skills, expertise, or scope of services that they would or could provide. The duty was to act as reasonably prudent persons in the provision of the services that Defendants provided or claimed to provide, including consultation and litigation support services.

52. Defendants breached that duty as follows:

    a. Blust breached the duty by recommending and in some instances causing Carolina Legal to engage in a course of conduct that Blust knew to be unlawful or in violation of the N.C. Rules of Professional Conduct, or that would otherwise result in Carolina Legal and its employees being exposed to civil claims and criminal charges.

    b. Blust breached the duty by misrepresenting his past experience in the provision of debt adjusting services, which included instances in which Blust, his companies, or his affiliates had been investigated or prosecuted by state law enforcement or administrative agencies, none of which Blust ever disclosed to Carolina Legal.

    c. Lit Def, Relialit, and LOJB breached the duty by failing to provide services to Carolina Legal's clients in a competent or diligent manner, and by failing to adhere in the provision of such services to other applicable rules of professional conduct, including but not limited to rules related to the confidentiality of client information.

53. As a direct and proximate result of such breach, Carolina Legal has suffered damages in an amount in excess of $75,000 to be determined at trial.

## Prayer for Relief

WHEREFORE, Plaintiff respectfully prays the Court award them the following relief:

1. Trial by jury as to all matters so triable;

2. That Plaintiff have and recover compensatory damages from Defendants in an amount in excess of $75,000 to be determined at trial, plus pre- and post-judgment interest to the extent the law allows;

3. That Plaintiff have and recover punitive damages from Defendants;

4. Alternatively, that a constructive trust be imposed on Defendants that would require Defendants to return all money that Carolina Legal paid to Defendants from May 1, 2018, to present, to Carolina Legal;

5. That Plaintiff have and recover their reasonable attorney's fees to the extent the law allows;

6. That the costs of this action be taxed against Defendants; and

7. Any other relief the Court deems just and proper.

This 27th day of April, 2021.

Respectfully submitted,

**WEAVER, BENNETT & BLAND, P.A.**

/s/ Bo Caudill
Bo Caudill
NC Bar No. 45104
bcaudill@wbbatty.com
Matthew M. Villmer
NC Bar No. 48239
196 N. Trade St.
Matthews, NC 28105
Tel: (704) 844-1400
Fax: (704) 845-1503
*Counsel for Plaintiff*