UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO: 3:21-CV-00191-MOC-DCK

DANIEL RUFTY LEGAL, PLLC, d/b/a Carolina Legal Services,

    Plaintiff,

v.

JASON BLUST, LAW OFFICE OF JASON BLUST, LLC, LIT DEF STRATEGIES, LLC, and RELIALIT, LLC,

    Defendants.

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS**

## INTRODUCTION

Daniel Rufty violated the North Carolina Rules of Professional Conduct and entered into a voluntary consent order with the North Carolina State Bar requiring that his law license be suspended and he paid $1,000,000 in restitution. Now, through Plaintiff, Rufty seeks to shift the blame for his own actions to Defendants. But Plaintiff has no standing to seek damages that Rufty suffered as a result of his own voluntary settlement. Thus, the Court lacks subject matter jurisdiction. The Court also lacks personal jurisdiction over the out-of-state defendants because Plaintiff's Complaint does not arise from any in-forum conduct by Defendants.

In addition, Plaintiff's Complaint fails to state a claim because: (1) Plaintiff failed to allege the essential terms of any alleged oral agreement with Defendants and the statute of limitations eliminates liability for alleged breaches that occurred before April 27, 2018; (2) Plaintiff's negligence claim is barred by the economic loss rule, Plaintiff's contributory negligence, the intervening acts of third-party Rufty, and Defendants' lack of a duty owed to Plaintiff; and (3) Plaintiff alleges no fraud, malice, or willful or wanton conduct to support punitive damages.

1

**FACTUAL BACKGROUND**

**I.      Plaintiff Alleges Damages Based On Third-Party Rufty's Voluntary Settlement.**

Plaintiff alleges that the North Carolina State Bar filed a complaint against Third-Party Rufty—not Plaintiff—that resulted in Third-Party Rufty—not Plaintiff—voluntarily agreeing to a suspension of his law license and a payment of $1,000,000 as restitution. (Compl. ¶¶ 25-26). The Complaint does not allege that Plaintiff was a party to the North Carolina State Bar's Disciplinary Hearing Commission or Consent Order. (*Id.*) Indeed, the State Bar disciplinary rules provide that they apply to members, not law firms. *See, e.g.*, 27 N.C. Admin. Code 1B.0103(18) (defining "Defendant" as "*a member* of the North Carolina State Bar against whom a finding of probable cause has been made." (emphasis added)).

Yet Plaintiff now claims damages based on Third-Party Rufty's voluntary settlement. (Compl. ¶¶ 36-37, 52-53).

**II.     No Contracts.**

No defendant had a written contract with Plaintiff. (*Id.* ¶¶ 34, 39). Though Plaintiff alleges that each defendant had an oral agreement with Plaintiff, Plaintiff has not alleged the effective date, duration, or price to be paid under such agreements. (*See generally*, *id.*). The alleged subject matter of the agreements is that Blust would "provide consultation services with respect to the operation, administration, and management of a consumer debt defense or debt adjustment law firm," and that the other defendants would "provide 'litigation support' services" in exchange for payment. (*Id.* at ¶¶ 34, 39). No other details are alleged with respect to the terms of these alleged oral agreements. (*See generally, id.*).

Despite the alleged oral agreements, Plaintiff alleges that the Defendants "provid[ed] Carolina Legal with virtually no services at all." (*Id.* at ¶ 4).

### III. Blust's Inactivity In The Forum.

"Blust is a citizen and resident of Illinois who lives in or around Chicago, Illinois." (Compl. ¶ 6). "Blust is not and has never been licensed to practice law in North Carolina." (*Id.* at ¶ 15). Blust has visited North Carolina 5 to 10 times in his life, each time for personal reasons. (Exhibit 1, Declaration of Jason Blust, ¶ 3). Blust has never owned property in North Carolina. (*Id.* at ¶ 4).

Blust had one in-person meeting with Meg Sohmer Wood. (*Id.* at ¶ 5). This meeting occurred in Chicago in early 2018. (*Id.*) Wood then created Meg Sohmer Wood, PLLC d/b/a Carolina Legal Services (the Plaintiff) on February 6, 2018. (Exhibit 2, Articles of Organization for Meg Sohmer Wood, PLLC). Blust allegedly "managed all aspects of the *initial* organization" of Meg Sohmer Wood, PLLC, "including but not limited to [the firm's] selection and retention" of certain vendors. (Compl. ¶ 18) (emphasis added). Other than the one in-person meeting in Chicago, all communications between Blust and Wood were by phone or email, while Blust was located in Illinois. (Blust Decl. ¶ 6).

Blust had two in-person meetings with Rufty. (*Id.* at ¶ 5). These meetings occurred in Chicago and New York. (*Id.*) Blust allegedly "facilitated the transfer of ownership" of Plaintiff to Rufty. (Compl. ¶ 22).

Plaintiff alleges that Blust "either did not actually provide" services or that his services—rather than Third-Party Rufty's own violations of the North Carolina Rules of Professional Conduct and North Carolina General Statutes—are to blame for Third-Party Rufty's voluntary settlement. (*Id.* at ¶ 30).

### IV. The Law Office Of Jason Blust, LLC's Inactivity In The Forum.

The Law Office of Jason Blust, LLC ("Blust Law") "is a limited liability company organized and existing under the laws of Illinois with its principal place of business in Chicago,

3

Case 3:21-cv-00191-MOC-DCK   Document 15   Filed 06/25/21   Page 3 of 17

Illinois." (Compl. ¶ 7). Blust Law:

- is not registered to do business in North Carolina,
- has no offices, property, financial accounts, or assets in North Carolina,
- has no employees in North Carolina, and
- does not advertise or solicit business in North Carolina.

(Blust Decl. ¶¶ 7-14).

The Complaint alleges that Blust Law billed and received payment for services provided to Plaintiff. (Compl. at ¶ 27). Again, Plaintiff alleges that Blust Law "either did not actually provide" services or that its services—rather than Third-Party Rufty's own violations of the North Carolina Rules of Professional Conduct and North Carolina General Statutes—are to blame for Third-Party Rufty's voluntary settlement. (*Id.* at ¶ 30).

### V. Lit Def Strategies, LLC's Inactivity In The Forum.

Lit Def Strategies, LLC ("Lit Def") "is a limited liability company organized and existing under the laws of Illinois with its principal place of business in Chicago, Illinois." (Compl. ¶ 8). Lit Def:

- is not registered to do business in North Carolina,
- has no offices, property, financial accounts, or assets in North Carolina,
- has no employees in North Carolina, and
- does not advertise in North Carolina.

(Blust Decl. ¶¶ 25-33).

The Complaint alleges that Lit Def billed and received payment for services provided to Plaintiff. (Compl. ¶ 27). Plaintiff claims that Lit Def did not provide services for which it billed "for the vast majority" of Plaintiff's clients engaged in litigation. (*Id.* at ¶ 29).

4

**VI.     Relialit, LLC' Inactivity In the Forum.**

Relialit, LLC ("Relialit") "is a limited liability company organized and existing under the laws of Illinois with its principal place of business in Chicago, Illinois." (Compl. ¶ 9). Relialit:

- is not registered to do business in North Carolina,
- has no offices, property, financial accounts, or assets in North Carolina,
- has no employees in North Carolina, and
- does not advertise in North Carolina.

(Blust Decl. ¶¶ 15-24).

The Complaint alleges that Relialit billed and received payment for services provided to Plaintiff. (Compl. ¶ 27). Plaintiff claims that Relialit did not provide services for which it billed "for the vast majority" of Plaintiff's clients engaged in litigation. (*Id.* at ¶ 29).

**ARGUMENT**

**I.     The Court Lacks Subject Matter Jurisdiction Because Plaintiff Has No Standing To Assert Claims For Damages Suffered By Rufty.**

"The plaintiff bears the burden of proving that subject-matter jurisdiction properly exists in federal courts." *Badika v. Heffron*, No. 3:20-CV-00649-MOC-DCK, 2021 WL 2209125, at *1 (W.D.N.C. June 1, 2021). "To invoke the power of a federal court, plaintiffs must demonstrate that they have standing under Article III of the Constitution. Article III standing implicates the court's subject matter jurisdiction." *Askew v. City of Kinston*, No. 4:19-CV-13-D, 2019 WL 2126690, at *3 (E.D.N.C. May 15, 2019).

First, "[i]t is well settled that under Article III of the United States Constitution, a plaintiff . . . 'cannot rest his claim to relief on the legal rights or interests of third parties.'" *Smith v. Frye*, 488 F.3d 263, 272 (4th Cir. 2007) (quoting *Warth v. Seldin*, 422 U.S. 490, 498–99 (1975)). At its core, Plaintiff's Complaint blames Defendants for Rufty's violation of North Carolina law and the

5

North Carolina Rules of Professional Conduct that resulted in Rufty voluntarily settling his dispute with the North Carolina State Bar. (*See* Compl. ¶¶ 24-26, 30-32, 35-36, 42, 52). The Consent Order agreed to by Rufty required that his law license be suspended and he paid $1,000,000 in restitution. But Plaintiff, a Professional Limited Liability Company organized under North Carolina law, is distinct from Rufty. *See Keepers, Inc. v. City of Milford*, 807 F.3d 24, 40 (2d Cir. 2015) ("[B]ecause a corporation is a distinct legal entity from its shareholders and officers, courts are not permitted to simply assume its standing to assert the rights of those third parties."); *cf. Keith v. Town of Knightdale*, 139 F.3d 890 (4th Cir. 1998) ("A similar rule precludes suit by a partner for injuries suffered by the partnerships for which the entities themselves could recover" and collecting cases about same). As a result, Plaintiff's attempt to seek damages from Defendants for damages incurred by Rufty fails unless Plaintiff can satisfy the requirements for third-party standing.

"A party seeking third-party standing must show that (1) he has a close relationship with the person who possesses the right *and* (2) there is a hindrance to the possessor's ability to protect his own interests." *Askew*, 2019 WL 2126690, at *4 (emphasis added). Not only is there no close relationship as defined by the Court's third-party standing doctrine, there is also no hindrance to Rufty's ability to bring his own claim against Defendants. Thus, Plaintiff lacks third-party standing to assert claims on behalf of Rufty to recover damages allegedly suffered by Rufty as a result of Defendants' alleged actions.

Next, Article III requires that a plaintiff identify an injury in fact "that is fairly traceable to the challenged conduct of the defendant." *Episcopal Church in S.C. v. Church Ins. Co. of Vermont*, 997 F.3d 149, 155 (4th Cir. 2021). "[T]he plaintiff must be able to demonstrate that the alleged harm was caused by the defendant, as opposed to the independent action of some third party not

6

before the court." *Air Evac EMS, Inc. v. Cheatham*, 910 F.3d 751, 760 (4th Cir. 2018). Here, the alleged damages stem from Rufty's failure to comply with the Rules of Professional Conduct and his voluntary agreement to a Consent Order with the North Carolina State Bar. The suspension of Rufty's law license, his $1,000,000 restitution payment, and any dissatisfaction of Rufty's and Plaintiff's clients are the result of Rufty's own actions or inaction and cannot be traced to Defendants' alleged conduct.

Because Plaintiff alleges an injury that is really Rufty's injury and that injury was caused by Rufty's own actions and inactions and *voluntary* agreement to a Consent Order with the North Carolina State Bar, Plaintiff lacks standing and the Court lacks subject matter jurisdiction.

## II. The Court Lacks Personal Jurisdiction.

"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff ultimately bears the burden of proving to the district court judge the existence of jurisdiction over the defendant by a preponderance of the evidence." *Venderbush v. Veritas Techs. LLC*, No. 3:18-CV-00272-FDW-DSC, 2018 WL 3428154, at *1 (W.D.N.C. July 16, 2018) (citation omitted). Because all Defendants are Illinois residents without a principal place of business in North Carolina, the Court cannot exercise general jurisdiction. Thus, the Court must examine whether it can exercise specific jurisdiction over Defendants.

"[F]or a court to have specific jurisdiction, the suit must arise out of or relate to the defendant's contacts with the forum." *Id.* at *2; *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1781 (2017) ("[S]pecific jurisdiction requires an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State."). To determine whether a defendant has minimum contacts with the forum such that maintenance of the suit does not offend traditional notions of

7

fair play and justice, courts consider: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Venderbush*, 2018 WL 3428154, at *2. The key to specific jurisdiction is whether Defendants acted purposefully in North Carolina "such that [they] could expect to be haled into court there on a claim *arising out of* [*their*] *activity in* [*North Carolina*]." *Sneha Media & Entm't, LLC v. Associated Broad. Co. P Ltd.*, 911 F.3d 192, 199 (4th Cir. 2018) (emphasis original).

Moreover, the relationship between the forum and defendant "must arise out of contacts that the 'defendant *himself*' creates with the forum State. Due process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties. [The Supreme Court] ha[s] consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." *Walden*, 571 U.S. at 284 (emphasis original) (internal citations omitted). In other words, "mere injury to a forum resident is not a sufficient connection to the forum." *Id.* at 290.

First, the factors that courts consider to determine whether a party has minimum contacts with the forum and purposefully availed itself to the forum do not support a finding of specific jurisdiction. Defendants never visited the forum for business and all of their alleged conduct occurred outside of the forum. In fact, Plaintiff alleges the opposite of in-forum conduct by claiming that Defendants provided "virtually no services at all." Moreover, Defendants are not registered to do business in North Carolina, have no employees, offices, property, financial accounts, or assets in North Carolina, and the alleged oral agreement contained no choice of law

8

or forum selection provision. Thus, Defendants have insufficient contacts with the forum and did not purposefully avail themselves of the forum because they could not reasonably expect to be haled to court in North Carolina arising out of their nonexistent activity in North Carolina. *See Walden*, 571 U.S. at 288 (holding that there were insufficient minimum contacts for Nevada to exercise specific jurisdiction over a defendant "who approached, questioned, and searched [plaintiffs], and seized the cash [from Plaintiffs], in the Atlanta airport" even though the defendant knew that plaintiffs were about to board a flight to Nevada and had strong connections with Nevada).

Second, the Complaint does not arise from any in-forum conduct by Defendants. "In a breach of contract case, personal jurisdiction cannot be established through the contract alone." *SC Advisors 7, LLC v. Rudnick*, No. 3:19-CV-00716-FDW-DSC, 2020 WL 4227469, at *3 (W.D.N.C. July 23, 2020). This Court has held that it could not exercise specific jurisdiction over non-resident defendants who contracted with a North Carolina resident when the defendants executed the contract in California, there was no evidence that they negotiated the contract in North Carolina, the dispute concerned property outside North Carolina, and the alleged conduct that breached the contract occurred outside North Carolina. *Joseph v. Joseph*, No. 3:18-CV-003-MOC-DCK, 2018 WL 4137094, at *6 (W.D.N.C. July 9, 2018), *report and recommendation adopted*, No. 3:18-CV-3, 2018 WL 4110545 (W.D.N.C. Aug. 29, 2018). To the extent that Plaintiff's Complaint can be viewed as alleging conduct by Defendants that breached an oral agreement, breached a duty under a negligence theory, or constituted the unwarranted retention of payments, such conduct occurred exclusively outside of North Carolina. *See id.*; *see also Debbie's Staffing Servs., Inc. v. Highpoint Risk Servs., LLC*, No. 1:17CV657, 2018 WL 1918603, at *8 (M.D.N.C. Apr. 20, 2018) (holding that there was no specific jurisdiction over conversion claim when the

9

alleged conversion occurred outside North Carolina even though the plaintiff "suffered the brunt of the harm in North Carolina where it is incorporated and maintains its principal place of business").

Because all of Defendants' alleged acts occurred outside of North Carolina and Plaintiff's residence is the only tie to North Carolina, the Court lacks specific jurisdiction.

### III. Plaintiff's Breach Of Contract, Negligence, And Punitive Damages Claims Fail.

For a motion to dismiss under Rule 12(b)(6), the complaint must contain sufficient facts to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must show more than "a sheer possibility that a defendant has acted unlawfully." *Id.* While the Court should accept as true all well-pleaded allegations, it need not accept "[l]abels, conclusions, recitation of a claim's elements, and naked assertions devoid of further factual enhancement." *ACA Fin. Guar. Corp. v. City of Buena Vista, Virginia*, 917 F.3d 206, 211–12 (4th Cir. 2019). This is because Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" and "simply reciting the cause of actions' elements and supporting them by conclusory statements does not meet the required standard." *Id.*

#### A. Plaintiff's Breach Of Contract Claim Fails Because Plaintiff Failed To Allege The Essential Terms Of An Agreement.

"[C]laims for breach of contract . . . necessarily hinge on the threshold issue of whether a valid contract actually existed." *Charlotte Motor Speedway, LLC v. Cty. of Cabarrus*, 230 N.C. App. 1, 6 (2013). "Under longstanding North Carolina law, a valid contract requires (1) assent; (2) mutuality of obligation; and (3) definite terms. It is a well-settled principle of contract law that a valid contract exists only where there has been a meeting of the minds as to all essential terms of the agreement." *Id.* at 7 (internal citations and quotations omitted). "[A] contract that leaves material portions open for future agreement is nugatory and void for indefiniteness." *Id.* (internal

10

Case 3:21-cv-00191-MOC-DCK   Document 15   Filed 06/25/21   Page 10 of 17

citations and quotations omitted). This is because "[w]here the parties have failed to reach an agreement from which the courts can glean the material terms, courts should not be in the business of creating contracts for the parties." *JDH Cap., LLC v. Flowers,* No. 07CVS5354, 2009 WL 649161, at *9 (N.C. Super. Mar. 13, 2009).

"[E]ssential terms of a contract include the parties, the subject matter of the agreement, and the price to be paid under it." *Castro v. Goggins*, No. 1:16CV10, 2016 WL 4508349, at *5 (M.D.N.C. Aug. 26, 2016). This Court has also dismissed a breach of contract claim for failure to sufficiently allege the essential terms of an oral contract when the plaintiff "failed to specify the terms of that contract or its duration." *Herman v. Lackey*, No. 3:06CV251, 2007 WL 9735415, at *4 (W.D.N.C. June 7, 2007), *aff'd,* 309 F. App'x 778 (4th Cir. 2009).

Moreover, Plaintiff cannot simply allege that there was a valid oral contract between the parties because that is a legal conclusion. *Prassas Cap., LLC v. Blue Sphere Corp.*, No. 3:17-CV-131-RJC-DCK, 2018 WL 1567362, at *4 (W.D.N.C. Mar. 30, 2018) ("While the Court addresses a Motion to Dismiss, the validity of a contract is a legal conclusion and therefore not entitled to a presumption of truth"); *Charlotte Motor Speedway*, 230 N.C. App. at 6 ("An allegation that a valid contract exists between parties is a legal conclusion").

Here, Plaintiff fails to allege the essential terms of a contract with each defendant. Plaintiff does not allege the effective date of any agreements, when and how the parties reached a meeting of the minds, the parties to each agreement, the definite terms of each agreement, the pricing arrangement under each agreement, and much more. Instead, Plaintiff alleges only a generic description of services to be provided under the alleged agreements. (*Id.* at ¶¶ 34, 39). Even these generic allegations are self-defeating because it is unclear how or why Relialit, Lit Def, and Blust Law would all have separate contracts with Plaintiff to provide the same services. (*Id.* at ¶ 39). In

11

other words, Plaintiff fails to delineate what "litigation support services" each defendant was responsible for providing under the alleged oral agreements.

Without knowing each defendant's obligations under the alleged oral agreements, there can be no breach of contract. *Pres. Pro. Servs., LLC v. M2 Pictures, LLC*, No. 3:14-CV-589-RJC-DCK, 2015 WL 3657463, at *3 (W.D.N.C. June 12, 2015) ("To make a claim for breach of contract, a party must show . . . an obligation contained in that agreement that has not been fulfilled by the opposing party."). Indeed, the Court has no way of ascertaining what provisions of the alleged oral agreements that Defendants allegedly breached and how Defendants' conduct constituted a breach.

Plaintiff even takes a "have your cake and eat it too" approach by claiming that Blust, who was allegedly obligated under an oral agreement to provide "consultation services," "failed to provide such services *or* provid[ed] such poor services" that somehow proximately caused Rufty's violation of the Rules of Professional Conduct. (Compl. ¶ 35) (emphasis added). It cannot be both: Blust either provided services or he did not. And to the extent that it is the latter, which is supported by Plaintiff's allegation that Blust "managed all aspects of the initial organization" of Plaintiff and the selection and retention of multiple vendors (*id.* at ¶ 18), the Court has no way of evaluating whether Blust's alleged consultation services breached the agreement. This is because Plaintiff has alleged no definite term under the alleged oral agreement that provides a standard of care or method for measuring whether Blust's consultation services satisfied or breached his obligations under the agreement. Put differently, to the extent that Blust was simply required to provide consultation services under the alleged agreement, the Complaint itself alleges that he did so. But to the extent that Blust's consultation services were required to satisfy certain criteria, there is no way of ascertaining whether they did so without knowing the criteria to which the parties allegedly agreed.

12

In sum, Plaintiff's nonexistent or vague allegations about the definite terms of the alleged oral agreements forces the Court to create the terms of the agreements. Because the Court cannot do so, Plaintiff's breach of contract claim fails because Plaintiff failed to allege a valid contract with Defendants.

### B. The Statute Of Limitations Bars Claims Based On Alleged Breaches Occurring Before April 27, 2018.

Under North Carolina law, the statute of limitations for a breach of contract claim is three years. N.C. Gen. Stat. § 1-52(1). Plaintiff filed its Complaint on April 27, 2021. Thus, any breach of contract claims that accrued before April 27, 2018 are time barred.

Here, Plaintiff insinuates that Blust breached the alleged oral agreement based on his management of the organization of Plaintiff and the selection and retention of vendors. (Compl. § 18). Given that Plaintiff was created on February 6, 2018, some of these alleged acts occurred before April 27, 2018. To the extent that Plaintiff's breach of contract claim is based on any alleged acts occurring before that date, Plaintiff's claims are barred. The same is true for Plaintiff's unjust enrichment claim, which also has a three-year statute of limitations. *Ferro v. Vol Vo Penta of the Americas, LLC*, No. 5:17-CV-194-BO, 2017 WL 3710071, at *4 (E.D.N.C. Aug. 28, 2017) ("The statute of limitations for an unjust enrichment claim is three years."), *aff'd sub nom. Ferro v. Volvo Penta of the Americas, LLC*, 731 F. App'x 208 (4th Cir. 2018)

### C. Plaintiff's Negligence Claim Fails.

First, Plaintiff's negligence claim is barred by the economic loss rule. The Fourth Circuit "reject[s] attempts by the plaintiff to manufacture a tort dispute out of what is, at bottom, a simple breach of contract claim as inconsistent both with North Carolina law and sound commercial practice." *Legacy Data Access, Inc. v. Cadrillion, LLC*, 889 F.3d 158, 164 (4th Cir. 2018) (internal quotation marks and citation omitted); *Crescent Univ. City Venture, LLC v. Trussway Mfg., Inc.*,

13

376 N.C. 54, 58 (2020) ("Applying the economic loss rule, North Carolina courts have long refused to recognize claims for breach of contract disguised as the type of negligence claim" at issue here). To avoid application of the economic loss rule, plaintiff must show that Defendants "owed a duty independent of and distinguishable from a duty owed by contract." *Gen. Cas. Co. of Wisconsin v. Murphy-Hoffman Co.*, No. 5:20-CV-376-D, 2020 WL 6173547, at *2 (E.D.N.C. Oct. 21, 2020).

Here, Plaintiff does the opposite. Rather than allege an independent duty, Plaintiff alleges that Defendants owed "a duty of care . . . by virtue of their contractual relationship with [Plaintiff]." (Compl. ¶ 51). Thus, this claim is not pled in the alternative and is barred by the economic loss rule.

Defendants also owed Plaintiff no duty outside of the alleged contractual relationship. Plaintiff alleges that a duty existed because of Defendants' representations about skills, expertise, or scope of services. (Compl. ¶ 51). But Plaintiff fails to identify the alleged representations. Nor do these allegations explain why Defendants would owe Plaintiff a duty. *McDaniel v. John Crane, Inc.*, No. 1:19CV359, 2021 WL 1111154, at *16 (M.D.N.C. Mar. 23, 2021) ("[T]he duty owed by a defendant to a plaintiff is determined by the relationship subsisting between them."); *see also Senderra RX Partners, LLC v. Blue Cross & Blue Shield of N. Carolina*, No. 1:18-CV-871, 2019 WL 9633642, at *8 (M.D.N.C. May 23, 2019) ("Ordinarily, two parties to a commercial transaction have limited common law duties to each other."). And "[i]f there is no duty, there can be no liability." *Keith v. Health-Pro Home Care Servs., Inc.*, 853 S.E.2d 28, 48 (N.C. Ct. App. 2020). Defendants especially owed no duty here, when Plaintiff is a sophisticated entity and a law firm. Rufty, as the member-manager of Plaintiff and a licensed North Carolina attorney, was responsible for ensuring that his and Plaintiff's services complied with the North Carolina Rules of Professional Conduct and North Carolina statutes. N.C. Rules of Professional Conduct,

14

Preamble ("Every lawyer is responsible for observance of the Rules of Professional Conduct."). Rufty and Plaintiff cannot delegate that duty to a third party. Yet Plaintiff purports to do just that by claiming that Defendants had a duty to ensure that Rufty complied with the N.C. Rules of Professional Conduct and that Plaintiff complied with the law. (Compl. ¶ 52).

If anything, Plaintiff's unlawful conduct constitutes contributory negligence and bars Plaintiff's claims. *Provectus Biopharmaceuticals, Inc. v. RSM US LLP*, No. 17 CVS 10396, 2018 WL 4700371, at *14 (N.C. Super. Sept. 28, 2018) ("Contributory negligence is negligence on the part of the plaintiff which joins, simultaneously or successively, with the negligence of the defendant alleged in the complaint to produce the injury of which the plaintiff complains. In North Carolina, a plaintiff's contributory negligence acts as a complete bar to its own negligence claims."). In the alternative, Rufty's unlawful conduct, violations of the Rules of Professional Conduct, and *voluntary* settlement with the North Carolina State Bar are intervening and superseding causes of Plaintiff's alleged damages. *Bridges v. Parrish*, 366 N.C. 539, 541, 742 S.E.2d 794, 796–97 (2013) ("The criminal acts of a third party are generally considered unforeseeable and independent, intervening causes absolving the defendant of liability. For this reason, the law does not generally impose a duty to prevent the criminal acts of a third party."); *McDaniel*, 2021 WL 1111154, at *16 ("[T]he general rule is that there is no duty to protect others against harm from third persons" unless a special relationship exists between the parties). Put simply, Rufty cannot agree to sustain damages and then seek to recover them indirectly through Plaintiff.

Finally, to the extent that Plaintiff attempts to allege a claim for negligent misrepresentation, such claim fails for a variety of reasons. (*See* Compl. ¶ 52(b) (alleging a misrepresentation about past experience and failure to disclose). First, "negligent

15

Case 3:21-cv-00191-MOC-DCK   Document 15   Filed 06/25/21   Page 15 of 17

misrepresentation claims cannot be based on omissions under North Carolina law." *Senderra*, 2019 WL 9633642, at *8. Second, "[n]o duty of care arises out of 'a potentially adversarial arm's-length negotiation when the defendant does not have exclusive access or control over the relevant information." *Id.* Third, Rule 9(b)'s heightened pleading standard applies to negligent misrepresentation claims. *Topshelf Mgmt., Inc. v. Campbell-Ewald Co.*, 117 F. Supp. 3d 722, 727 (M.D.N.C. 2015) (dismissing negligent misrepresentation claim for failure to satisfy Rule 9(b)). To satisfy this standard, Plaintiff must identify the time, place, and contents of the representation at issue, as well as the identity of the person making the representation. *Id.* at 726. Plaintiff, however, has not alleged the time and place of any alleged misrepresentation.

### D. Plaintiff's Punitive Damages Claim Fails.

Plaintiff requests punitive damages in its prayer for relief. (Compl. p.10). Under North Carolina law, "[p]unitive damages may be awarded only if the claimant proves . . . that one of the following aggravating factors was present . . . : (1) [f]raud, (2) [m]alice, [or] (3) [w]illful or wanton conduct." N.C. Gen. Stat. § 1D-15(a). First, Plaintiff's breach of contract claim cannot support his claim for punitive damages. *Edwards v. Mutter*, No. 18 CVS 2818, 2019 WL 6894511, at *5 (N.C. Super. Dec. 17, 2019). Plaintiffs' other claims and allegations cannot support a claim for punitive damages because Plaintiff alleges no fraud, malice, or willful or wanton conduct. N.C. Gen. Stat. § 1D-5(7) (defining "willful or wanton conduct" as "the conscious and intentional disregard of and indifference to the rights and safety of others, which the defendant knows or should know is reasonably likely to result in injury, damage, or other harm," and "more than gross negligence."). Thus, Plaintiff's claim for punitive damages fails.

## CONCLUSION

For these reasons, Defendants respectfully request that the Court grant their motion to dismiss.

This the 25th day of June, 2021.

/s/ Sarah Motley Stone
Claire J. Rauscher (N.C. Bar No. 21500)
Sarah Motley Stone (N.C. Bar No. 34117)
Patrick G. Spaugh (N.C. Bar No. 49532)
WOMBLE BOND DICKINSON (US) LLP
One Wells Fargo Center, Suite 3500
301 S. College Street
Charlotte, N.C. 28202
Tel: (704) 331-4900
Fax: (704) 331-4955
Email: Claire.Rauscher@wbd-us.com
Email: Sarah.Stone@wbd-us.com
Email: Patrick.Spaugh@wbd-us.com

*Attorneys for Defendants*